**IN THE COURT OF APPEALS OF IOWA**

No. 16-0182
Filed April 6, 2016

**IN THE INTEREST OF M.C.,**
**Minor Child,**

**G.C., Father,**
 Appellant.
_____

 Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor,

District Associate Judge.


 A father appeals from the order terminating his parental rights.

**AFFIRMED.**



 J. David Zimmerman, Clinton, for appellant father.

 Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant

Attorney General, for appellee State.

 Brian P. Donnelly of Mayer, Lonergan & Rolfes, Clinton, for minor child.



 Considered by Danilson, C.J., and Vogel and Potterfield, JJ. Tabor, J.,

takes no part.

**DANILSON, Chief Judge.**

A father appeals from the order terminating his parental rights.[1] We review termination decisions de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). On April 14, 2015, the child (born in October 2014) was removed from the mother's care on an emergency basis due to her failure to provide adequate shelter, unsanitary living conditions, and concerns of the mother's substance use. In addition, the mother reported a long history of domestic violence between her and the child's father; there was a no-contact order in effect. The child's removal was confirmed on April 28, upon the juvenile court's finding:

> the child was removed from a home where the conditions were that it was a danger to the child. Today the mother presents and says she has moved to a different location that does not present those issues, but it is clear from the mother's testimony that she has a number of mental health and substance abuse issues that need to be addressed before she can safely be a parent to this child.

The child was adjudicated a child in need of assistance on May 28, 2015. The parents were offered numerous services. The mother was attending a substance abuse treatment program, and the child was returned to her in the residential treatment program in June 2015 for nine days. Unfortunately, the trial period of care was short-lived. The child was again removed from the mother's care on July 7. The mother was pregnant with twins and was not cooperating with substance abuse or mental health treatment. The mother and the father

---

[1] The mother's rights were also terminated. She does not appeal.

thereafter did not participate in services,[2] and their attendance of visits with M.C. was not consistent.

On October 6, 2015, the court entered a permanency order, which states in part:

> Given the lack of progress made by the parents to rectify the circumstances which led to the adjudication of the child as a child in need of assistance, the failure of the parents to address circumstances which would justify adjudication of the child as a child in need of assistance if placed in parental custody at this time, the length of time which the child has been placed out of the parents' care and control, and the need to establish permanency for the child, the Court finds that a hearing should be scheduled to determine whether parental rights should be terminated.

On January 12, 2016, the father's parental rights to the child were terminated pursuant to Iowa Code section 232.116(1)(d), (h), and (i) (2015).

The father appeals. He does not contest grounds for termination exist. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) ("Because the father does not dispute the existence of the grounds [for termination] . . . , we do not have to discuss this step.").

The father does assert, however, that termination of his rights is not in the child's best interests. *See* Iowa Code § 232.116(2) ("In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."). He contends section 232.112(3)(c) provides a reason not to terminate his parental rights. That section provides: "The court

---

[2] The father was to engage in anger management classes, maintain a home free from substance abuse, and meet regularly with parenting service providers.

need not terminate the relationship between parent and child if the court finds . . . [t]here is clear and convincing evidence that termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c).

> A finding under subsection 3 allows the court not to terminate. "The factors weighing against termination in section 232.116(3) are permissive, not mandatory," and the court may use its discretion, "based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship."

*A.M.*, 843 N.W.2d at 113 (citations omitted).

The father acknowledged that he had anger management issues, and the evidence reflects that he has failed to comply with recommended services to address this issue. During the pendency of this action, the father was incarcerated for forty-five days; failed to attend visitation consistently; and, due to a lack of employment, faced difficulties in finding a stable and suitable residence for the child. The father espouses love for the child but has not put the child's needs above his own. Unfortunately and sadly, the child cannot wait for the father to become sufficiently motivated to comply with services and to parent.

The record does not provide clear evidence termination would be detrimental to the child. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. As noted by the juvenile court, the father chose not to do anything required by the case plan until the eve of the termination trial. Then, "[s]uddenly at today's hearing [the mother

and father] have made several appointments for things that should have been done months ago. Due to the child's age, he cannot wait for the parents to decide to be parents." *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). The father's past performance does not invoke confidence in his future efforts. *See id.* We will not extend the statutory time frame under the circumstances presented here. *See id.* ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."). The child is in a pre-adoptive foster placement and is doing well there. We conclude termination of the father's parental rights will provide the child permanency and is in the child's best interest. We therefore affirm.

**AFFIRMED.**